UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 17-21594-JGR |
| WALTER CHARNOFF ) | |
| SSN: XXX-XX-3670 ) | Chapter 11 |
| ) | |
| Debtor. ) | |

## MOTION FOR APPROVAL OF MUTUAL RELEASE, SETTLEMENT AGREEMENT, AND COVENANT NOT TO SUE

The Debtor, Walter Charnoff ("Charnoff" or "Debtor"), by and through his attorneys, Kutner Brinen, P.C., moves the Court for entry of an Order approving a Mutual Release, Settlement Agreement, and Covenant Not To Sue between Charnoff and certain other parties to settle the amount due to GoldenGator, LLC, ONIT Solutions, LLC, REIsmart, LLC, Altisource Portfolio Solutions S.A., and Altisource S.à.r.l (collectively "Altisource") and provide mutual releases, and in support thereof states as follows:

1. The Debtor filed his voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on December 21, 2017 ("Petition Date"). The Debtor remains a debtor-in-possession and is operating and managing his business pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Debtor has already entered into a settlement and release agreement with the largest creditor in this case, Ladd 2000 Partners, Ltd ("Ladd"). The Ladd settlement and the implementation of the settlement was approved by the Court's entry of certain Orders dated February 5, 2019 approving the following motions: a) Unopposed Motion To Approve: 1) Mutual Settlement Agreement, and Covenant Not to Sue; and 2) Release of Funds From Escrow Accounts; b) Motion For Approval of Contribution Agreement; and c) Motion For Approval of Lending Agreement and for Authority to Incur Debt on a Secured Basis (collectively "Settlement Motions").

3. In October 2015, the Debtor sold GoldenGator and two additional companies, ONIT Solutions, LLC ("ONIT"), and REIsmart, LLC ("REIsmart") to Altisource Solutions, S.A. In accordance with the sale documents, a portion of the purchase price for the three companies was placed in three escrow accounts to address any unknown claims at the time of the sale. The three escrow accounts are held at Wells Fargo Bank are:

   a. Account ending 8801, titled "Altisource Solutions S.A.R.L., Walter Charnoff, GoldenGator Indemnity Account";

   b. Account ending 8800, titled "Altisource Solutions S.A.R.L., Walter Charnoff, ONIT Indemnity Account";

   c. Account ending 8802, titled "Altisource Solutions S.A.R.L., Walter Charnoff, REISmart Indemnity Account".

(collectively the "Altisource Escrow Accounts").

4. In connection with the Ladd settlement and pursuant to the Settlement Motions, most of the money contained in the Altisource Escrow Accounts in the amount of $2,157,193.32 will be paid to Ladd. This payment to Ladd will leave approximately $204,305.32 in the Altisource Escrow Accounts.

5. The Debtor has now been able to resolve his issues with Altisource and has entered into the Mutual Release, Settlement Agreement, and Covenant Not To Sue with Altisource ("Altisource Agreement"). A copy of the Altisource Agreement is attached hereto as Exhibit A.

6. The Altisource Agreement provides that the balance in the Altisource Escrow Accounts, approximately $204,305.32 will be paid to Altisource. It further provides that the Altisource parties and the Debtor and his wife Brande Charnoff mutually release one another from any and all claim, subject to certain limited exceptions that are set out in the Altisource Agreement at paragraph 9.

7. The use of the Altisource Escrow Accounts to pay Ladd was clearly described and approved in the Ladd Settlement Motions.

8. The Altisource Agreement provides for the final payment of the remaining funds in the Altisource Escrow Accounts to Altisource after Ladd is paid. This payment to Altisource will close out the Altisource Escrow Accounts.

9. The Altisource Agreement requires approval of the Bankruptcy Court for it to become effective.

10. The Altisource Agreement does not impact creditors in this case because the Ladd payment has already been approved, the Debtor is solvent, the remaining funds in the Altisource Escrow Accounts are held in escrow for Altisource's benefit and are not available to pay creditor claims other than indemnification claims held by Altisource. Further notice of this Motion should not be required.

11. The resolution of the Altisource Escrow Accounts and the mutual release of the Debtor and his wife and the Altisource parties will resolve another large issue in the case. The Ladd settlement and the Altisource settlement leave the Debtor solvent and able to handle his remaining claims outside of the bankruptcy case. The Debtor intends to file a motion for dismissal of the case conditioned upon the successful closing of the Ladd settlement.

WHEREFORE, the Debtor prays that the Court make and enter an Order approving the Mutual Release, Settlement Agreement, and Covenant Not To Sue, attached hereto as Exhibit A and for such further and additional relief as to the Court may appear proper.

DATED: February 6, 2019                    Respectfully submitted,

                                           By: */s/ Lee M. Kutner*
                                               Lee M. Kutner, #10966
                                               **KUTNER BRINEN, P.C.**
                                               1660 Lincoln St., Suite 1850
                                               Denver, CO 80264
                                               Telephone: (303) 832-2400
                                               Telecopy: (303) 832-1510
                                               E-Mail: lmk@kutnerlaw.com

## CERTIFICATE OF SERVICE

I certify that on February 6, 2019, I served a complete copy of the foregoing **MOTION FOR APPROVAL OF MUTUAL RELEASE, SETTLEMENT AGREEMENT, AND COVENANT NOT TO SUE** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

James R. Miller
Miller Associates, LLC
Equitable Building
730 17th Street
Suite 340
Denver, CO 80202

Paul V. Moss, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Synchrony Bank
c/o PRA Receivables Management, LLC
P.O. Box 41021
Norfolk, VA 23541

Carl C. Scherz, Esq.
Joseph Unis, Esq.
Locke Lord LLP
2200 Ross Avenue
Suite 2200
Dallas, Texas 75201

R. Livingston Keithley, Esq.
The Overton Law Firm
165 South Union Blvd.
Suite 542
Lakewood, CO 80228

William J. Kelly III, Esq.
Kelly & Walker LLC
1512 Larimer Street
Suite 200
Denver, CO 80202

John F. Young, Esq.
Matthew T. Faga, Esq.
Markus Williams Young & Zimmerman LLC
1700 Lincoln Street, Suite 4550
Denver, CO 80203-4505

Berry D. Spears, Esq.
Brandan Montminy, Esq.
LOCKE LORD LLP
2200 Ross Avenue
Suite 2800
Dallas, Texas 75201

Joseph Unis, Esq.
Carl C. Scherz, Esq.
LOCKE LORD LLP
2200 Ross Avenue
Suite 2800
Dallas, Texas 75201

Hamil Law Group LLC
455 Sherman Street
Suite 300
Denver, CO 80203

Colorado Landmark-Boulder
2350 Broadway
Boulder, CO 80304

Mark W. Williams, Esq.
Sherman & Howard LLC
633 17th Street
Suite 3000
Denver, CO 80202

Jeffrey S. Pagliuca, Esq.
Haddon Morgan Foreman
150 East 10th Avenue
Denver, CO 80203

John A. Purvis, Esq.
Purvis Gray Thomson, LLP
4410 Arapahoe Avenue
Suite 200
Boulder, CO 80303

Ian T. Hicks, Esq.
The Law Office of Ian T. Hicks LLC
6000 East Evans Avenue
Building 1, Suite 140
Denver, CO 80222

Richards Carrington, LLC
1700 Lincoln Street
Suite 3400
Denver, CO 80203

Mark A. Shaiken, Esq.
1050 17th Street
Suite 2400
Denver, CO 80265


**/s/Vicky Martina**
**Vicky Martina**
**Kutner Brinen, P.C.**

## **MUTUAL RELEASE, SETTLEMENT AGREEMENT, AND COVENANT NOT TO SUE**

THIS MUTUAL RELEASE, SETTLEMENT AGREEMENT, AND COVENANT NOT TO SUE ("AGREEMENT" or "SETTLEMENT AGREEMENT") is entered into this 24th day of January 2019 (the "effective date"). This Agreement is by and among Walter Charnoff, individually and as Seller's Representative under the agreements described herein, (referred to as "Charnoff"); Brande Charnoff ("Brande"); GoldenGator, LLC; ONIT Solutions, LLC; REIsmart, LLC; Altisource Portfolio Solutions S.A.; and Altisource S.à.r.l , successor-in-interest to Altisource Solutions S.à.r.l

These individuals and entities may each be referred to individually as "Party" and collectively as the "Parties." GoldenGator, LLC; ONIT Solutions, LLC; REIsmart, LLC; Altisource Portfolio Solutions S.A.; and Altisource S.à.r.l may collectively be referred to as "the Altisource Parties."

### **RECITALS**

1. WHEREAS, the Parties (except Brande, who is only a party to the agreement in 1.B) to this Agreement entered into previous agreements, including:

    A. July 17, 2017 Separation Agreement and Full Release.

    B. October 9, 2015 Purchase and Sale Agreement by and among Altisource Portfolio Solutions S.A., Altisource Solutions S.à.r.l , and the Equity Interest Holders of Each of ONIT Solutions, LLC and GoldenGator, LLC and Certain of the Equity Interest Holders of REIsmart LLC.

    C. October 9, 2015 Rights and Share Escrow Agreement.

    D. October 9, 2015 Escrow Agreement.

    E. October 9, 2015 Funds Flow and Settlement Statement.

    F. October 11, 2016 First Amendment to Rights and Share Escrow Agreement.

    G. June 30, 2017 Stock Repurchase Agreement.

    H. October 2016 Second Amendment to Escrow Agreement.

    I. June 30, 2017 Second Amendment to Purchase and Sale Agreement.

    J. Any other agreement by or among the Parties arising out of the subject matter of the agreements listed in this paragraph.

Collectively, the "Charnoff/Altisource Agreements."

2. WHEREAS, all Parties to this Agreement except Altisource Portfolio Solutions S.A. and Altisource S.à.r.l were or are also parties in the case *Ladd 2000 Partners, Ltd. v. RentRange, LLC*, No. 2015CV33785 (Denver Dist. Ct.), which is currently before the Colorado Court of Appeals and styled *Ladd 2000 Partners, Ltd. v. Charnoff*, No. 2018CA820 ("the Lawsuit").

3. WHEREAS, in conjunction with a separate settlement agreement among the parties to the Lawsuit, the Parties to this Agreement have agreed to mutually release, settle, and covenant not to sue each other as specified herein.

**AGREEMENT**

4. BANKRUPTCY COURT APPROVAL. This Agreement is explicitly subject to approval by the U.S. Bankruptcy Court for the District of Colorado, which is hearing Charnoff's bankruptcy matter. If the bankruptcy court does not approve this Agreement, then the Agreement will be void *ab initio*.

5. PAYMENT. Upon bankruptcy court approval, and within three days of the date the Parties close the settlement in the Lawsuit ("Ladd Settlement"), and in exchange for the Altisource Parties' execution of this Agreement, Charnoff will cause all amounts remaining in the Wells Fargo Escrow Account (established pursuant to the Escrow Agreement (as amended) described in Recitals 1. D., F., and H) following distribution of the payment contemplated in the Ladd Settlement to be paid directly to the Altisource Parties, which amount payable to the Altisource Parties is expected to equal or exceed two hundred four thousand, three hundred and five dollars, and thirty-two cents ($204,305.32 ("the Payment"). This payment is contingent on Altisource cooperating in the conclusion of the Ladd Settlement, and the Ladd Settlement actually being finalized as set forth in the Ladd Settlement documentation.

6. SETTLEMENT.

a. Except as described in Paragraph 9, the Payment and the terms of this Agreement shall be in full settlement and in satisfaction of any and all judgments, claims, and demands of whatever nature that any Party has, had, or may have against any other Party as of the effective date of this Agreement arising out of the Charnoff/Altisource Agreements listed in paragraph 1 of the Recitals.

b. Brande was only a limited party to the Purchase and Sale Agreement set forth in 1.B. above, and had only a limited obligation thereunder. Brande and the Altisource Parties also agree that the agreements, releases, and covenants herein apply to them, releasing each other as set forth in the releases below.

c. It is hereby expressly acknowledged that all amounts paid pursuant to this Agreement and all terms of this Agreement are made for any damage of any kind allegedly caused by any Party arising out of the agreements listed in paragraph 1 of the Recitals, and for the release and covenant not to sue herein. However, the Parties expressly acknowledge that this Paragraph 6 does not cover tax liabilities arising out of the Charnoff/Altisource Agreements, nor does it release any claims relating to attorney fees claimed by James R. Miller of Miller Associates, LLC. Altisource agrees that for the consideration herein, it will

not file any objections to the motion to approve the Ladd Settlement or this Agreement in Charnoff's bankruptcy case or any motion to dismiss the Charnoff bankruptcy action.

7. NO ADMISSION OF LIABILITY. The Parties all agree and acknowledge that this Agreement is executed for the sole purpose of resolving potential and contested claims and disputes, and avoiding the financial costs, expenses, and uncertainties associated with such dispute and any related litigation. It is also expressly agreed and acknowledged that the execution or performance of any term of this Agreement shall not constitute or be construed as an admission of any liability or fault or any indication that any of claims or defenses have any merit.

8. RELEASE. By Charnoff allowing the Payment to the Altisource Parties, each Party, on behalf of itself (and in Charnoff's case the Sellers under the Charnoff/Altisource Agreements) and any of its present, former, or future companies, parent companies, divisions, subsidiaries, affiliates, associates, representatives, predecessors, successors, heirs, families, owners, assigns, executors, administrators, directors, agents, partners, principals, members, shareholders, officers, employees, trustees, insurers and reinsurers, representatives or any of them, and their lawyers and all persons acting by, through, under or in concert with them, or any of them, hereby forever releases, discharges, and acquits each other Party, and any of its present, former, or future companies, parent companies, divisions, subsidiaries, affiliates, associates, representatives, predecessors, successors, heirs, owners, assigns, executors, administrators, directors, agents, partners, principals, managers, members, shareholders, officers, employees, trustees, insurers and reinsurers, representatives or any of them, and their lawyers and all persons acting by, through, under or in concert with them, or any of them, from any and all manner of action or actions, cause or causes of action, whether class, derivative, or individual in nature, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, judgments, jury verdicts, damages, losses, costs or expenses, of any kind or nature whatsoever, past, present, or future, known or unknown, suspected or unsuspected, fixed or contingent, relating to the claims for any damage of any kind that a Party hereto has or may have against any other Party hereto that arises out of any obligation any party hereto has or may have to the other, of any kind including, but not limited to, the agreements listed in paragraph 1 of the Recitals or the Lawsuit. Each Party agrees and acknowledges that it may have sustained damages, losses, fees, costs or expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs or expenses it may have sustained might give rise to additional damages, losses, fees, costs or expenses in the future. Nevertheless, each Party acknowledges that it has been advised by its legal counsel, or has had the opportunity to do so, and has negotiated and agreed upon this Agreement, and, except as provided herein, hereby expressly waives any rights under any regulation, statute, or common law principle entitling it to any damages, losses, fees, costs or expenses whatsoever, known or unknown relating to the claims as released in this Agreement that a Party hereto has or may have as of the effective date of this Agreement.

9. EXCEPTIONS TO RELEASE. The Parties expressly acknowledge that the release in paragraph 8 of this Agreement does not:

a. extend to tax liabilities arising out of the agreements listed in paragraph 1 of the Recitals;

3

b. release any alleged claims, if any, by and between Charnoff and James R. Miller and Miller Associates, P.C. relating to attorney fees claimed, or services rendered by, James R. Miller of Miller Associates, LLC.;

c. release Charnoff from his obligations in Paragraph 5.3(a)(and only that paragraph) of the October 9, 2015 Purchase and Sale Agreement by and among Altisource Portfolio Solutions S.A., Altisource Solutions S.à.r.l, and the Equity Interest Holders of Each of ONIT Solutions, LLC and GoldenGator, LLC and Certain of the Equity Interest Holders of REIsmart LLC, or his obligations in paragraphs 10(ii) and10(iii) (and only those paragraphs) of the July 17, 2017 Separation Agreement from the date of the signing of this Agreement to the expiration of the "Restricted Period" as defined by that July 17, 2017 Separation Agreement.

d. release any Party from their obligations under paragraph 11 of the July 17, 2017 Separation Agreement from the date of the signing of this Agreement

e. release any Party from any obligations either Party has or may have under this Agreement;

f. release the law firms of Jones & Keller, P.C. or Kirkland & Ellis, or any of their attorneys from any claims Charnoff may have against such firms or any of their attorneys. The Altisource Parties agree they have no claim, will not have any claim, and will not make any claim to any recovery Charnoff may obtain from such firms or their attorneys and that any such recovery is Charnoff's property alone.

10. COVENANT NOT TO SUE. Subject to the other terms of this Agreement, including paragraph 8 above, each Party hereto agrees and covenants not to institute, cause to be instituted, or cooperate in or facilitate the institution of, any action against any other Party in which liability is in any way to be predicated upon any claims released in this Agreement.

11. ASSUMPTION OF RISK. The Parties understand, acknowledge, and agree that if any fact now believed to be true hereafter is found to be other than or different from that which is now believed, they expressly assume the risk of such difference in fact and agree that this Agreement shall remain effective notwithstanding any such difference in fact.

12. COMPLETE AGREEMENT, NO WAIVER. The Parties agree and acknowledge that this is the entire agreement between the Parties with respect to this specific subject matter, and that this Agreement cannot be changed or amended except by a written amendment which specifically refers to this Agreement and which is signed by all Parties. The failure of either Party to assert a right hereunder or to insist upon compliance with any term or condition of this Agreement shall not constitute a waiver of that right or excuse a similar subsequent failure to perform any such term or condition by the other Party.

13. REPRESENTATIONS AND WARRANTIES. The Parties agree and acknowledge that they entered into this Agreement after consultation with their attorneys, or had the opportunity to do so, that their attorneys have explained the terms of this Agreement, and that the Parties to this Agreement freely understand and voluntarily accept the terms of this Agreement.

14. CHOICE OF LAW. The Parties agree and acknowledge that this Agreement shall be construed under and interpreted in accordance with the laws of the State of Colorado.

15. BINDING AGREEMENT. This Agreement shall be binding upon and inure to the benefit of, and be enforceable by the Parties and their respective successors, administrators, trustees, executors, assigns, and insurers.

16. CHOICE OF JURISDICTION AND VENUE. In the event that any Party brings a lawsuit (or other proceedings) for the purpose of seeking the enforcement of this Agreement, exclusive jurisdiction and venue shall be in the District Court for the City and County of Denver, Colorado, unless the Parties otherwise agree in writing. The party who primarily prevails in such proceeding shall be entitled to recovery of reasonable attorney fees and costs incurred..

17. **WAIVER OF JURY TRIAL. THE PARTIES HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY RIGHT WHICH THEY MAY OTHERWISE HAVE TO A JURY TRIAL IN ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) BETWEEN OR AMONG THE PARTIES TO THIS AGREEMENT, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.**

18. COUNTERPARTS/FACSIMILE SIGNATURES. This Agreement may be executed in multiple, original counterparts by the Parties hereto, each of which shall be deemed an original, but which taken together shall constitute but one and the same instrument effective as of the date each party hereto has executed multiple counterparts hereof. Facsimile copies of the Parties' signatures shall be treated as originals. This Agreement may also be executed by providing an electronic signature under the terms of the Electronic Signatures Act, 15 U.S.C. § 7001 et. seq., and may not be denied legal effect solely because it is in electronic form or permits the completion of the business transaction referenced herein electronically instead of in person.

19. CONFIDENTIALITY. This Agreement and its terms shall be maintained in the utmost confidence by the Parties and their counsel, except as otherwise required by law. However, the parties may disclose such information to their attorneys and their financial and tax advisors, as required by law or any regulatory or governmental agency, in accordance with legal process or a court order, in connection with a legal action to enforce the terms of this Agreement, or as may be reasonably required by creditors, beneficiaries, bureaus, auditors, accountants or tax consultants of the parties. Charnoff is expressly permitted to file this agreement with the United States Bankruptcy Court for the District of Colorado in his bankruptcy case. The parties understand and agree that this agreement must be approved by the Bankruptcy Court in order to be effective and, when approved, and the conditions herein are satisfied, the payment may be made and this agreement will simultaneously be fully effective.

20. COOPERATION. All Parties agree to cooperate fully in the performance of the Agreement.

21. INCOME TAX CONSEQUENCES. No Party has made any representation concerning, nor shall they be responsible in any manner for, the income tax consequences of the execution of this Agreement, or of any payment made pursuant to this Agreement.

22. CONSTRUCTION. None of the Parties shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

23. AUTHORITY. All signatories to this Agreement specifically warrant and represent that they are authorized to sign and enter into this Agreement on behalf of the Party for whom they sign. Charnoff specifically warrants and represents that he has authority to make the Payment and enter into this agreement as Sellers' Representative under the Charnoff/Altisource Agreements.

[The remainder of this page is intentionally left blank.]

Walter Charnoff

Date: January 24, 2019

By: /s/
Name: Walter Charnoff

]

Brande Charnoff

Date: January _____, 2019

By: _____
Name: Brande Charnoff

GoldenGator, LLC

Date: January _____, 2019

By: _____
Name: _____
Title: _____

ONIT Solutions, LLC

Date: January _____, 2019

By: _____
Name: _____
Title: _____

Walter Charnoff

Date: January _____, 2019

By:_____
Name: Walter Charnoff

]

Brande Charnoff

Date: January **24th**, 2019

By: *Brande Charnoff* (signature)
Name: Brande Charnoff

GoldenGator, LLC

Date: January _____, 2019

By:_____
Name:_____
Title:_____

ONIT Solutions, LLC

Date: January _____, 2019

By:_____
Name:_____
Title:_____

Walter Charnoff

Date: January _____, 2019

By:_____
Name: Walter Charnoff

]

Brande Charnoff

Date: January _____, 2019

By:_____
Name: Brande Charnoff

GoldenGator, LLC

Date: January 24, 2019

By: *[signature]*
Name: Mark F.A. Kearns
Title: Manager

ONIT Solutions, LLC

Date: January 24, 2019

By: *[signature]*
Name: Mark F.A. Kearns
Title: Manager

7

Date: January 24, 2019

REIsmart, LLC

By: /s/ Mark F.d. Kearns
Name: Mark F.d. Kearns
Title: Manager

Altisource Portfolio Solutions S.A.

Date: January 26, 2019

By: /s/ Kevin J. Wilcox
Name: KEVIN J. WILCOX
Title: MANAGER

Altisource S.à.r.l

Date: January 26, 2019

By: /s/ Kevin J. Wilcox
Name: KEVIN J. WILCOX
Title: MANAGER

8